UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANGELA NORTHCUTT, )
)
Plaintiff, )
)
v. ) No. 4:24 CV 200 RWS
)
MARTIN O'MALLEY, )
Commissioner of Social Security, )
)
Defendant. )

## MEMORANDUM AND ORDER

Plaintiff Angela Northcutt brings this action seeking judicial review of the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401.  Section 205(g) of the Act, 42 U.S.C. §§ 405(g), provides for judicial review of a final decision of the Commissioner.   Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

### Procedural History

Plaintiff was born in 1975 and protectively filed her application on August 31, 2021.  (Tr. 10, 182-84.)  She alleges she became disabled beginning August 16, 2021, because of degenerative disc disease, anxiety, arthritis, bipolar disorder, and borderline personality disorder.  (Tr. 213.)

Plaintiff's application was initially denied on March 8, 2022 and upon reconsideration on April 20, 2022. (Tr. 119-22, 124-27.) After a telephonic hearing before an ALJ on December 7, 2022, the ALJ issued a decision denying benefits on March 13, 2023. (Tr. 39-66, 10-22.) On December 6, 2023, the Appeals Council denied plaintiff's request for review. (Tr. 1-6.) The ALJ's decision is now the final decision of the Commissioner.

In this action for judicial review, plaintiff contends that the ALJ improperly evaluated opinion evidence and her subjective symptoms. She asks that I reverse the Commissioner's final decision and remand the matter for further evaluation. For the reasons that follow, I will affirm the Commissioner's decision.

### Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts (ECF #8-1) only to the extent they are admitted by the Commissioner (ECF #9-1). I find the Commissioner's clarifications of plaintiff's statement of facts to be supported by the record, so I adopt his version of those facts (ECF #9-1). Additional specific facts will be discussed as needed to address the parties' arguments.

### Discussion

A.    <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act,

plaintiff must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step 1 of the process, the Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, at Step 2 the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. At Step 3, the Commissioner then determines whether claimant's

3

impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[1] When an ALJ gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full

---

[1] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

6

and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In his written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 16, 2021.  (Tr. 12.)  The ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, post-traumatic stress disorder, major depressive disorder, and generalized anxiety disorder.  (Tr. 13.)  The ALJ determined that plaintiff's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13-15.)  The ALJ found plaintiff to have the residual functional capacity (RFC) to perform light work with the following limitations:

> [T]he claimant has the residual functional capacity to lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently. She can stand/walk for about 6 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. She can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to excessive vibration. She should avoid moderate exposure to operational control of moving machinery. She should avoid unprotected heights and exposure to hazardous machinery. Her work is limited to simple and routine tasks. Her work should be in a low stress job, defined as having only occasional changes in the work setting. She should have only occasional interaction with the public, co-workers, and supervisors.

(Tr. at 15).

The ALJ found that plaintiff had no past relevant work and relied upon vocational expert testimony to support a conclusion that that there were significant jobs in the economy of cleaner, hand packer, and production that plaintiff could perform. (Tr. 21.) The ALJ therefore found plaintiff not to be disabled. (Tr. 22.)

C.    Opinion Evidence

Plaintiff argues that the ALJ erred in his evaluation of the medical opinion of consultative examiner Thomas Spencer, Psy.D., when fashioning her RFC. Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it failed to include Dr. Spencer's opinion that she was moderately limited in her ability to "consistently stay on task."

RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*,

228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

In this case, after considering all this evidence, the ALJ concluded that plaintiff retained the capacity to perform light work, with significant modifications tailored to her credible limitations.  In so doing, he did not substantially err.  The ALJ properly evaluated the medical evidence using the new regulations applicable to plaintiff's claim.  *See* 20 C.F.R. § 416.920c(a)-(c) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources;" in evaluating persuasiveness, ALJ should consider supportability, consistency, relationship with the claimant -- which includes length of the treatment relationship, frequency of examinations, examining relationship,  purpose of the treatment relationship, and the extent of the treatment relationship, specialization, and other factors).  "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."  *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted); *See* 20 C.F.R. § 416.920b(c)(1)-(3) (2017) (statements on issues reserved to the Commissioner, such as statements that a claimant is or is not

9

disabled, are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.").

Here, plaintiff argues that the ALJ erred because he found Dr. Spencer's opinion to be "generally persuasive" but allegedly failed to include the limitation with respect to staying on task in her RFC or explain why he did so. *See* 20 C.F.R. § 416.920c(b)(2) (2017) (the ALJ was required to explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion).

Dr. Spenser examined plaintiff on January 26, 2022. (Tr. 804.) She was adequately groomed and in no physical distress. (Tr. 806.) Eye contact was intermittent, but her speech was normal, judgment, insight, and flow of thought were intact, and she was alert and oriented to person, place, month/year, and event. (Tr. 806.) She was not paranoid or grandiose, did not respond to internal stimuli, and denied any hallucinations. (Tr. 806.) She was described as a decent historian. (Tr. 806.) She was of average intelligence and displayed no receptive or expressive language deficits. (Tr. 806.) She recalled only one of three objects after five minutes of distraction but displayed no impairment in long-term memory. (Tr. 806.) Plaintiff appeared anxious and fidgety and described her mood as nervous and tired. (Tr. 806.) Plaintiff stated that she cared for two dogs, picked up the house, and watched television. (Tr. 806.) After examination, Dr. Spencer

10

concluded that plaintiff had a moderate impairment in her ability to learn, recall, and use information and to consistently stay on task. (Tr. 806.) Dr. Spencer also opined that plaintiff demonstrated a moderate to marked impairment in her ability to relate to and work with others on a consistent basis. (Tr. 806.)

In assessing the opinion evidence, the ALJ found Dr. Spencer's opinion "generally persuasive because the results of his mental status examination were fairly benign." (Tr. 19.) The ALJ went on to evaluate Dr. Spencer's opinion as follows:

> The remainder of the medical evidence of record indicates that at times, the claimant is noted to have an anxious or not good mood and anxious affect. However, even when there are some positive clinical signs, most examinations reflect the claimant is alert and fully oriented, she has good eye contact, her speech is normal, her memory is normal, she is cooperative with a normal or good mood and calm affect, her attention and cognition are normal or focused, her thought processes are logical and organized, her thought content is normal, and, her insight and judgment are fair.

(Tr. 19.)

The ALJ relied on medical records B13F/3, B17F/5, B18F/28, B13F/3, B15F/3, B17F/9, 13, 17 and 21, B18F/5, 28, and B19F/80 in his discussion of Dr. Spencer's opinion. These records reveal that at her annual examination on December 9, 2019, plaintiff was not nervous or anxious and she was alert and oriented to person, place, and time with normal and cooperative behavior and normal thought content and judgment. (Tr. 311.) At her consultative examination

by Tyler Marler, D.O., on February 26, 2022, plaintiff was alert and had good eye contact, fluent speech, normal memory, and good concentration. (Tr. 811.) She was oriented to time, place, person and situation but her mood was "not appropriate." (Tr. 811.) And during an office visit with Samara McElroy, D.O., on September 8, 2022, for complaints of numbness, dizziness, and headaches, plaintiff's psychiatric examination was unremarkable, with normal attention and perception, normal mood and affect, and normal cognition, memory, and judgment. (Tr. 853.)

During an initial follow-up appointment with Enos Kenneth Moss, PMHNP-BC, on September 16, 2021, to establish psychiatric care, plaintiff presented with a brighter, appropriate affect and no acute distress. She was alert and oriented to person, place, time, and situation, her speech and thought processes were normal, her memory was intact, concentration and attention were focused, and judgment and insight were fair. (Tr. 831.) She was continued on psychotropic medications after reporting few side effects and less irritability. (Tr. 830-31.) She was diagnosed with cannabis use and counseled about the risks of continued use, including increased depression and anxiety, paranoia, irritability, and concentration deficits. (Tr. 831.) Nevertheless, plaintiff expressed an interest in obtaining a "cannabis card." (Tr. 829.) Plaintiff's depression, anxiety, and PTSD were rated at the moderate severity levels. (Tr. 831.)

At her next appointment with Moss on November 17, 2021, plaintiff's mood was "not good" and her affect was anxious.  Plaintiff reported her grandfather was dying and her grandson was having problems.  (Tr. 833.)  Her examination was otherwise within normal limits, including focused attention and concentration.  (Tr. 835.)  Plaintiff reported medication nonadherence despite the absence of side effects and continued use of cannabis.  She was continued on her medications and instructed to maximize her dose of lamotrigine if symptoms did not improve or recur, and she was once again counseled about the risks of continued cannabis use.  (Tr. 836.)  Plaintiff was rated at a high level of anxiety and moderate levels of depression and PTSD.  (Tr. 835.)

On January 19, 2022, plaintiff told Moss that she was feeling more stable but reported interrupted sleep and decreased appetite.  (Tr. 837.)   Her mood was good and her affect was calm, and her examination was within normal limits.  (Tr. 839.)  Her medications were continued and she was advised to continue therapy and counseled about the risks of continued cannabis use.  (Tr. 840.)  Plaintiff's depression and anxiety were rated low severity and her PTSD was rated stable.  (Tr. 839.)

In May of 2022, plaintiff's medication adherence and appetite were improved, although plaintiff still reported some erratic sleep patterns.  (Tr. 841-

13

42). Her mood was ok and her affect was calm, and mental status examination was normal. (Tr. 843.) The severity levels of her diagnoses remained unchanged.

Plaintiff reported having COVID during her next appointment with Moss in August of 2022, but she had no major dips in mood between appointments. (Tr. 845.) Her mental status examination was normal. (Tr. 847.) Her depression and anxiety were rated at a low level of severity and her PTSD was observed to be stable. (Tr. 843.)

Contrary to plaintiff's argument, the ALJ adequately explained the weight given to Dr. Spencer's opinion by discussing the supportability and consistency of the evidence. The ALJ explained how Dr. Spencer's conclusions were supported by his relatively normal mental status examination of plaintiff and generally consistent with the other medical evidence of record, which showed primarily normal mental status examinations, including normal memory and focused attention and concentration, even when plaintiff reported some symptoms such as an anxious mood. And as discussed below, the ALJ also noted other evidence in the record demonstrating that plaintiff's symptoms were not as severe as alleged. He was not required to do more, as "the regulation does not require an ALJ to address each and every part of a medical opinion to show that the entire opinion was properly considered; nor does it require the ALJ to entirely adopt each and every part of an opinion simply because she finds it persuasive." *McClure v. Saul*,

14

Case No.1:20CV150 SNLJ, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021);

*Koss v. Kijakazi*, Case No. 4:20CV996 RLW, 2022 WL 715009, at *10 (E.D. Mo.

Mar. 10, 2022) (same).

Plaintiff argues that the ALJ erred because he did not adopt verbatim the

psychologist's opinion that plaintiff had a "moderate impairment in her ability to

consistently stay on task." But the ALJ adopted the limitations suggested by Dr.

Spencer by limiting plaintiff to simple, routine tasks in a low stress environment

with only occasional social interaction. He was not required to adopt Dr.

Spencer's conclusions verbatim, as "the ALJ is free to accept some, but not all, of

a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (applying

the revised medical-opinion regulations and holding that "the ALJ is free to accept

some, but not all, of a medical opinion"). Instead, the ALJ translated the

limitations suggested by Dr. Spencer and the other credible evidence of record into

work-related restrictions,[2] consistent with his duty to formulate the RFC. To the

extent such an approach could even be considered a deficiency in opinion writing,

---

[2] Plaintiff's RFC adequately accounts for a moderate limitation in staying on task, as the regulations define a moderate limitation as a "fair" ability to perform in an area. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00F(2) (defining moderate limitation as one where "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair"). Thus, despite plaintiff's suggestion to the contrary, a moderate limitation in this area does not preclude work. And as discussed above, the non-exertional limitations were consistent with the objective medical evidence of record which consistently demonstrated plaintiff had normal memory and focused attention and concentration.

it is not a sufficient reason to set aside an ALJ's finding.  *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021).

Plaintiff's reliance on *Titus v. O'Malley*, Case No. 4:23CV129 JSD, 2024 WL 620364, at *4 (E.D. Mo. Feb. 14, 2024), is unavailing.  In *Titus*, remand was required because the ALJ summarized Dr. Spencer's opinion given in that case but failed to weigh its persuasiveness.  *Id.* ("In this discussion, the ALJ failed to articulate the persuasiveness given to Dr. Spencer's medical opinion regarding Plaintiff's mental capabilities.").  No such error occurred in this case, as the ALJ here explicitly articulated the weight given to Dr. Spencer's opinion.

As with all the opinion evidence, the ALJ noted whether or not Dr. Spencer's findings were consistent with the lengthy medical record previously summarized in his decision.  (Tr. 18.)  He then incorporated those credible limitations which were consistent with the record evidence as a whole when fashioning plaintiff's RFC.  In so doing, he provided plaintiff a more restrictive RFC where the evidence as a whole supported it,[3] and discounted those restrictions

---

[3] For example, the ALJ concluded that the assessments made by Kim Stalker, Psy.D., and Linda Skolnick, Psy.D., with respect to plaintiff's non-exertional limitations were not persuasive "given the claimant's testimony regarding the adverse effects of stress and problems with interaction."  (Tr. 19.).  Accordingly, despite their opinions that plaintiff had only mild limitations in these areas, the ALJ limited plaintiff to simple and routine tasks in a low stress job with only occasional changes in the workplace and only occasional interaction with others.

Likewise, in evaluating the opinions of Clifford Costley, M.D., and Dennis McGraw, D.O., with respect to plaintiff's exertional limitations, the ALJ concluded that greater postural and additional or greater environmental limitations were required when fashioning plaintiff's RFC to

16

where inconsistent with the record evidence.  That is precisely the role of the ALJ, and although plaintiff may believe that he should have assessed Dr. Spencer's opinion differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in his determination of plaintiff's RFC.  *Hensley*, 829 F.3d at 934.  The ALJ did not substantially err in evaluating Dr. Spencer's opinion of plaintiff's non-exertional limitations when fashioning her RFC, and his decision is entitled to deference. Plaintiff points to no doctor's opinion in the record which supports disabling limitations.  It remains her burden to prove her RFC.  *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

The new regulations permit the ALJ to consider medical source evidence as appropriate. 20 C.F.R. § 416.920a(b)(1) (2017).  Ultimately, "the interpretation of physicians' findings is a factual matter left to the ALJ's authority."  *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citing *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005)).  Although plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the

---

avoid the risk of harm.  (Tr. 20.)  Accordingly, the ALJ provided a more restrictive RFC than recommended by these doctors and limited plaintiff to only occasional balancing, no climbing ropes, ladders, or scaffolds, and no concentrated exposure to excessive vibration.  (Tr. 15.)

ALJ in his determination of plaintiff's RFC. *Hensley*, 829 F.3d at 934. Under these circumstances, the ALJ did not substantially err in his assessment of Dr. Spencer's evidence, and his decision is entitled to deference.

D.    <u>Subjective Symptom Evaluation</u>

Plaintiff also alleges that the ALJ improperly evaluated her credibility. In addition to evaluating the medical evidence, the ALJ formulated plaintiff's RFC after consideration of the entire record, which included an evaluation of plaintiff's subjective symptoms, her testimony, and her daily activities as described by plaintiff and others. When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole. 20 C.F.R. § 404.1529(c); SSR 16-3p. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001). I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and

any functional restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322.  "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible."  *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).  It is not enough that the record contains inconsistencies.  Instead, the ALJ must specifically demonstrate in his decision that he considered all of the evidence.  *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ set out plaintiff's testimony regarding her daily activities and subjective allegations of her limitations at length and found plaintiff's statements about the intensity, persistence, and limiting effects of her impairments not entirely consistent with the evidence of record.  (Tr. 13-15, 16-17, 18).  The ALJ acknowledged plaintiff's reported symptoms and went on to weigh these allegations against the evidence of record as required by 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ determined that plaintiff's subjective allegations with respect to her non-exertional limitations were not entirely consistent with her routine mental health treatment, consisting primarily of regular doctor's appointments, therapy, and medication. (Tr. 17-18.) *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (noting that in evaluating the claimant's subjective complaints, the ALJ properly considered the claimant's pattern of conservative treatment) (citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)).

The ALJ also properly considered plaintiff's treatment notes and objective findings, which as detailed above showed consistently normal mental status examinations.   The medical records contain no evidence of hospitalizations for mental impairments.  Plaintiff repeatedly reported that her psychotropic medications were effective with little side effects.  If a claimant's pain is controlled by treatment or medication, it is not considered disabling. *See Cypress v. Colvin,* 807 F.3d 948, 951 (8th Cir. 2015).

Shortly after beginning treatment with medication and therapy, plaintiff's depression and anxiety were rated at a low severity level and her PTSD was noted as stable.  Although plaintiff was rated at a high level of anxiety and moderate levels of depression and PTSD during her November 17, 2021, appointment with Moss, she also reported medication nonadherence and stressful family circumstances, including the impending death of her grandfather. (Tr. 835.)  But

20

by her January 19, 2022, appointment, plaintiff was once again compliant with her medication regimen and her mental status examination was again within normal limits. Plaintiff's depression and anxiety were again rated at a low severity level and her PTSD was noted as stable, where they remained. (Tr. 839.) Plaintiff's improvement with conservative treatment is inconsistent with disabling impairments. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (ALJ's conclusions as to the severity of pain and limitations consistent with fact that claimant was prescribed generally conservative treatment).

Plaintiff was also repeatedly counseled about the risks of continued use of cannabis, including increased depression and anxiety, paranoia, irritability, and concentration deficits. Nevertheless, plaintiff expressed an interest in obtaining a "cannabis card" and reported continued cannabis use to Moss and Dr. McElroy during her September 8, 2022, appointment. (Tr. 850.) These undisputed facts support the ALJ's credibility determination. *See Grindley*, 9 F.4th at 630-31; *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (failure to follow doctor's advice supports adverse credibility determination).

The ALJ reached the same conclusion with respect to plaintiff's complaints of pain relative to her physical impairments. As discussed above, the ALJ properly considered objective medical evidence, including imaging and physical examinations, which indicated largely normal results. *See Goff v. Barnhart*, 421

21

F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints).   Physical examinations showed a full range of motion, normal strength in upper and lower extremities, normal gait, and negative straight-leg raising.  (Tr. 810-12, 852, 867, 962.)  The ALJ also noted that although plaintiff saw pain management specialists, her treatment was limited to medication.  (Tr. 17.)  Although plaintiff's medical records referred to an upcoming injection at L5-S1, the records do not indicate that plaintiff ever received any pain injection after her alleged onset date.  (Tr. 17.)

In assessing plaintiff's RFC, the ALJ appropriately considered her activities of daily living and her own reported abilities.  (Tr. 13-15, 16-17, 18.)  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  With respect to her physical limitations, plaintiff testified that she has a hard time sitting, standing, lifting, squatting, bending, reaching, walking, and climbing stairs.  She claimed that some days she feels fluid and without pain and other days she is in agonizing pain.  She stated that she has numbness and blackouts, can lift 15 pounds, stand for an hour before lying down, and that she has more bad days than good days.  She can walk about a mile.  With respect to her mental impairments, plaintiff reported she is unable to get out of bed on some days because of depression, she gets angry and snaps easily, she has anxiety-related chest pains, panic attacks, and is nervous around people yelling.  Plaintiff is always aware of her surroundings and feels

unsafe.  Plaintiff takes Duloxetine, Lamotrigine, Cyclobenzaprine, and Hydroxyzine.  She has no side effects from the medication other than they make her sleepy.  (Tr. 49-54.)  With respect to her daily activities, plaintiff testified that she cooks, does dishes, vacuum floors, some laundry, and cares for her pets.  (Tr. 54-58.)  Plaintiff gets easily distracted while doing chores.  (Tr. 58.)  The ALJ also expressly considered the Third-Party Function Report submitted by plaintiff's husband.  (Tr. 18.)

In weighing plaintiff's credibility, the ALJ concluded that plaintiff's daily activities were not entirely consistent with her testimony and claimed limitations, given that she admitted in her function report that she does not need reminders to see to her personal care, she manages finances, prepares meals, can follow written instructions, and follow clear spoken instructions.  Moreover plaintiff reported shopping in stores, visiting with others on the telephone, reading and watching television as hobbies, and getting along with authority figures.  "The inconsistency between [plaintiff's] subjective complaints and evidence regarding [her] activities of daily living also raised legitimate concerns about [her] credibility."  *Vance v. Berryhill*, 860 F.3d 1114,1121 (8th Cir. 2017).

Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing her daily activities, I may not reverse the Commissioner's decision merely because substantial evidence could also support a

contrary determination. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Here, the ALJ discounted plaintiff's subjective complaints only after evaluating the

entirety of the record. In so doing, he did not substantially err, as subjective

complaints may be discounted if inconsistencies exist in the evidence as a whole.

*Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).

The ALJ expressly acknowledged that plaintiff was experiencing pain, but

concluded, after evaluating the entirety of the record, that plaintiff's pain was not

so severe as to be disabling. Where, as here, an ALJ seriously considers but for

good reasons explicitly discounts a claimant's subjective complaints, the Court will

not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145,

1148 (8th Cir. 2001). The ALJ evaluated all of the evidence of record and

adequately explained his reasons for the weight given this evidence. Because the

ALJ's reasons for not fully crediting plaintiff's subjective complaints are supported

by the record, I will defer to his judgment. *See Hogan v. Apfel*, 239 F.3d 958, 962

(8th Cir. 2001). Credibility determinations, when adequately explained and

supported, are for the ALJ to make. *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir.

2000).

In this case, the ALJ evaluated all of the evidence of record and adequately

explained his reasons for the weight given this evidence in a manner consistent

with the new regulations. Good reasons and substantial evidence in the record as a

whole support the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Angela Northcutt's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of September, 2024.